## Case No. 493.

### ANTONE v. HICKS.

[2 Lowell, 383.][1]

District Court, D. Massachusetts. Dec. 1874.

SEAMEN—WAGES — SEPARATION FROM SHIP WITHOUT FAULT.

1. A seaman in the whaling service, who, having become separated from his ship by no fault of his own, fails to rejoin her from causes which he cannot control, is entitled to wages to the time of separation, and the expenses of return to his country, as if the ship had left him behind for sickness.

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

2. Where the master sold the effects of such a seaman by auction, and there was no evidence of negligence or bad faith on his part, the owner of the ship was held liable only for the amount realized by the sale.

[See Five Seamen v. The Fair American, Case No. 4,846; Veacock v. McCall, Id. 16,904; Nevett v. Clarke, Id. 10,138.]

In admiralty. The libellant was shipped at New Bedford in July, 1869, on board the defendant's ship Mermaid, for a whaling voyage not exceeding four years in length. In February, 1870, when the vessel was cruising off South Australia, the fourth mate's boat, with six men, was separated from the ship, and, after being out for two days with a very insufficient supply of food, they made the land at a point where there were no inhabitants. Three of the men walked overland to George's Bay, where the ship was expected to be found, and joined her. This took them about a week, and they were on the sick list after their arrival. The fourth mate and the remaining two men, of whom the libellant was one, went in the boat to Vasse, the nearest port, which was about two hundred and fifty miles from George's Bay by water, and was the only port they could make with the wind they had. The master's next cruise took him within about one hundred miles of Vasse, and he would have gone in there for the boat and the men, but that the wind was ahead and blowing hard, and he thought it would take too much time to wait for a change of wind. The libel set up that the master neglected his duty in not calling for the libellant at Vasse. The answer averred that the libellant deserted the ship.

C. T. Bonney, for libellant.

C. W. Clifford, for respondent.

LOWELL, District Judge. A case tried upon depositions, taken four years after the events occurred upon which the dispute arises, is not in the most satisfactory position for clearing up doubtful constructions of conduct. I think the preponderance of the evidence is, that the fourth mate, and the two men with him, not only did not desert the ship, but were not understood to have deserted her. The master knew where they were before he was told, which is pretty good evidence that they were in the right place. He knew they would be there when he called for them, and intended to call. He says he received a letter from the consul at Vasse, promising to detain the boat until he came. But the letter is not produced; and there is not the least reason to believe that the men had any intention of leaving Vasse or removing the boat. They remained there for several weeks after the ship had left them behind. The master does not testify that he entered the mate and men as deserters on his log-book, or reported them as such to the nearest consul, or to the

authorities at home; all which he was bound to do, if he believed the truth to be so. Neither the log-book, nor the copy of the articles that was on board the ship is produced. I do not know when he considers them to have deserted. Certainly not when they determined to stay by the valuable whaleboat and gear, rather than to take the chances of a week's journey overland in an unknown country. What were they to do? They could not stay in the uninhabited spot, where they first landed, without starving to death. Three of them tried the overland journey, and three sought the nearest and only available port. The former were the more fortunate; but I do not know that their course was more reasonable at the time it was undertaken.

It is clear to a reasonable intent that the ship deserted the men, and not the men the ship. Then the question remains whether this was such a breach of duty or contract on the part of the master as will entitle the libellant to damages. I am disposed to believe that the master decided this matter according to his best judgment. He had no interest to leave the boat or the men behind him; and I may well assume that his decision was in accordance with the interests he was bound to consult. In this I follow the same rule that I have applied to the conduct of the fourth mate, when he determined to make sail to Vasse, instead of leaving his whaleboat upon the beach, and going overland to George's Bay. It was not a case in which humanity required that the men should be rescued at all hazards. They were in a country where they could take care of themselves, and had some opportunities to obtain employment and a passage home, though such opportunities do not appear to have been very frequent. At all events, they did not apply for relief to the consul, or the person who acted as such. What are the rights of the parties in such a state of things? By the articles an officer or man who is prevented by sickness or death from performing the whole voyage is to have his lay in the proportion which the time he served bears to the whole length of the voyage. This has often been held to be a reasonable stipulation. The same rule was adopted by Judge Sprague, where a minor justifiably but voluntarily left a whaling-ship in a foreign port. Lovrein v. Thompson, [Case No. 8,557.] Where two seamen, on occasion of a collision, induced by sudden and reasonable fear, jumped on board the colliding vessel, and the master of their ship was unable to lie by for them, it was held that they had earned wages to the time of their separation from the vessel. Hanson v. Rowell. [Case No. 6,043.] In that case the judge said, that if the master had left them on board the foreign ship, without sufficient excuse, they should have had wages for the whole voyage.

This case does not seem to be precisely covered by either of these decisions. The men, in my opinion, failed to rejoin the ship, not only justifiably, but by a sort of compulsion. I do not find in the evidence, what I understand to be argued, that a vessel sailed from Vasse to George's Bay while the men were waiting at the former place, and that by not taking passage in her they neglected a known opportunity to rejoin the Mermaid. If the fact is so, it is not proved. As the case stands, the question was, whether the three men should undertake the voyage to George's Bay in their whale-boat, or wait for the ship to pick them up; and both parties acted on the supposition that the ship would call at Vasse, as she might easily do under ordinary circumstances. Notwithstanding these differences, the case is very like many in which the sickness of a seaman requires him to be left behind without any fault of his own, and he cannot rejoin the ship, though, if the master could wait a day or two, he might resume duty. In such a case the owners are bound to pay the expenses of the seaman's return to his own country. Brunent v. Taber, [Id. 2,054.] This return of seamen is a policy very deeply ingrained in our commercial law, and is fairly applicable to a case of this kind. In this case, however, there is the circumstance that the fourth mate found himself in possession of a boat and its equipments, which the master values at $230. After he had been left at Vasse, he sold these things for some price not known to the libellant, and out of the money he appears to have paid the board of himself and the other men. This, perhaps, ought to be considered an equivalent for the passage money, in the absence of evidence of what the expenses were or the passage money would have been.

Then comes the question of the libellant's clothes. The master sold them by auction to the other men, according to a usage which has, I suppose, been of long standing in these voyages, in cases of death or desertion. By the shipping act, passed after the time of these transactions, a master is authorized to sell, in this mode, any clothes or effects of a seaman dying during the voyage. Act June 7, 1872, § 43, (17 Stat. 271.) Following out the analogy of an involuntary breaking up of the service, the master would seem to have adopted a justifiable course in disposing of the libellant's effects by auction. The amount realized seems small; and if there were reasons to suppose that any error could be shown in the account, or any negligence in keeping the goods, I should be disposed to permit an inquiry upon these matters. As the evidence stands, I find myself authorized to decree only the sum received, with interest, which in all is thirty-three dollars. I understand it to be admitted that the libellant had been paid more than his lay would be for the eight months of his service. Decree for the libellant for $33 and costs.